STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        DOCKET NO CV-10-178
                                        W/RA-PEN- 4/27/2012

KAREN DEMORANVILLE,

        Plaintiff,
    v.                                  ORDER
CAROLYN ROSE,

        Defendant.


    Plaintiff has filed a complaint alleging that she was injured as a result of

defendant's negligence. The defendant has filed a motion for summary judgment,

which is addressed by the Court in this order. Because the plaintiff did not admit, deny,

or qualify each allegation in the defendant's statement of material facts, they are

deemed admitted. The Court also considers plaintiff's statement of material facts to the

extent that a fact has not been admitted. A review of the summary judgment record

reveals that there are no genuine issues with regard to the following material facts,

unless specifically noted:

    1. Plaintiff took her daughter to the Isaac Royal Farm for horse riding lessons on

November 14, 2009. She had been taking her daughter there for lessons for a substantial

period of time. The facilities consisted of a residence, land, stalls, pastures, and show

fields. The farm was an unincorporated business that operated riding lessons, breeding,

shows, and an equestrian theater on the property

    2. At that time, a person named Lydia Rose owned the farm, but Carolyn Rose

was primarily in charge of the day-to-day operations of the business.

    3. Different instructors, including Sandy Beaulieu, had given lessons to the

plaintiff's daughter in the past and her instructor for November 14 was Ms. Beaulieu.

The practice was for the customer to write a check to the farm for the lessons and the

1

farm would pay a portion of the total to the instructor who gave the lesson. Ms. Beaulieu gave lessons primarily in the summer and spent winters in Florida or Connecticut. She also worked on the farm's website at a rate of $30 per hour and worked in the barn at a rate of $10 per hour and paid her own expenses in traveling to and from work. While giving lessons, Ms. Beaulieu and other instructors used the farm's horses, tack, and facilities.

4. The level of Ms. Rose's supervision and control over the instructors is somewhat in question. On the one hand, it is deemed admitted that Carolyn Rose did not supervise, manage, or direct Ms.Beaulieu in any way either during her lessons with clients or in establishing contacts with clients, that Carolyn Rose did not have control over Ms. Beaulieu's schedule, and that Ms. Beaulieu arranged her own lessons with clients. On the other, defendant did not have sufficient information to admit, deny, or qualify the following statements: "Plaintiff had not arranged that particular lesson with Sandra Beaulieu; she happened to be the instructor that, as plaintiff understood it was available on that date," and " Plaintiff did not specifically arrange for Sandra Beaulieu to be the riding instructor that day. Plaintiff had simply arranged the date and time of the lesson with Carolyn Rose." From this, the Court concludes, for purposes of this motion, that although generally the above admitted propositions are true, on this specific occasion the client may have contacted defendant directly to arrange for the lesson.

5. On November 14, 2009, the plaintiff went to the farm to pick up her daughter after the lesson. She walked to the front porch to go into the residence and went into the kitchen to get her daughter. As they were leaving, Ms. Beaulieu approached them and informed plaintiff that the check for the lesson had been misplaced, so plaintiff went to her car to get a check and returned to the porch where Ms. Beaulieu was located.

2

Plaintiff stood with her back to an open bulkhead that resembled a large hole in the porch because the hatch-type cover was open. After speaking with Ms. Beaulieu, plaintiff took a step back and fell through the hole. At the time of the incident, defendant was inside the home and had no interaction with plaintiff until after the fall. Defendant had seen the bulkhead door in the closed position earlier in the day and had not been aware that it was in the open position until she went out to assist the plaintiff after the fall. The hole in the porch is approximately 5 feet long and 3'9" wide and to the right is a wicker chair and to the left is a porch swing. Defendant had not opened the bulkhead door on that day and never opens it because of its weight. According to the defendant, the bulkhead was supposed to be left closed while clients were present on the farm.

## DISCUSSION

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.*; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. The court will review the evidence in the light most favorable to the non-moving party. *Cookson v. Brewer School Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, 281.

"[A] plaintiff who brings a cause of action for negligence must establish a prima facie case that the defendant owed him a duty of care, the defendant breached that duty, and the breach was a proximate cause of some injury to the plaintiff." *Estate of Cilley v. Lane*, 2009 ME 133, ¶ 10, 985 A.2d 481, 485 (citing *Addy v. Jenkins, Inc.*, 2009 ME

3

46, ¶ 8, 969 A.2d 935, 938). The threshold question of whether a duty exists is a question of law and reflects proper grounds for summary judgment disposition. *See Radley v. Fish*, 2004 ME 87, ¶ 6, 856 A.2d 1196, 1198-99 (citing *Parrish v. Wright*, 2003 ME 90, ¶ 18, 828 A.2d 778, 783). The Court discusses the issues raised by the defendants' respective motions for summary judgment in turn.

Two alternative theories of recovery must be discussed: premises liability and vicarious liability.

### 1. Premises Liability

Land occupiers owe all invitees "reasonable care in providing reasonably safe premises for their use." *Poulin v. Colby College, 402 A.2d 846, 848 (Me. 19xx)*. The duty has also been described as using "ordinary care to ensure that the premises are reasonably safe, protecting against all reasonably foreseeable dangers, in light of the totality of the circumstances. *Baker v. Mid Maine Medical Ctr., 499 A.2d 464, 467 (Me. 1985)*. Although usually expressed as the duty of the land owner, it is also the duty of an occupier of premises or one in control of the premises. *Id.* at 468. The plaintiff has the burden of proving not only that a dangerous condition existed but also that the defendant had actual or constructive notice of the danger. *Milliken v. City of Lewiston, 580 A.2d 151, 152 (Me. 1990)*. There is no liability when the "danger is known or obvious to the invitee unless the possessor should anticipate harm despite such knowledge or obviousness." *Isaacson v. Husson College*, 297 A.2d 98 (Me. 1972).

Applying these standards, the Court finds that one could reasonably conclude that the defendant was in control of the Isaac Royal Farm when plaintiff was injured and that whether defendant satisfied the above-defined duty is a jury question and not a question that can be decided as a matter of law. One of many possible rational conclusions in this case would be a finding that the defendant was aware of the

4

potential dangers posed by the bulkhead if open, hence the requirement that it be shut when clients were present. Although defendant was not aware that it was open at the time of the incident it could be reasonably expected that others at the farm could open it unless they were prevented from doing so by a lock, or other similar device. One could also reasonably conclude that merely indicating to others that the door was to remain shut is insufficient to satisfy the duty. Additionally, one could expect that access to the area should be physically restricted in some manner while the door is open, such as by roping it off, for instance. When open, there is a gaping hole in the porch, a place constructed for people to stand, sit or walk. Although significant liability and comparative negligence issues are obviously raised, a reasonable result of this litigation could be a finding that the defendant did not meet the duty of care.

In this context, it is difficult to distinguish between a barely viable plaintiff's case, and one that must be decided as a matter of law for the defendant. Examining precedent can be helpful. In *Baker*, 499 A.2d 464, Tom Watson was playing an exhibition with four local golfers at the Waterville Country Club. He hit his drive deep to the left, in the woods, and the other four hit their drives. The plaintiff was watching to the right of the fairway, 25 to 30 feet from its edge, across from the location of Watson's ball. He apparently became distracted while watching Watson, did not pay attention to the other golfers, heard someone shout "fore", and was immediately struck in the chest by a golf ball, sustaining injury. On appeal, it was ruled that it was error for the court to have directed a verdict for the defendant, who was the event organizer. The Law Court ruled that the jury was entitled to consider whether the defendants' failure to warn the plaintiff that another member of the fivesome was about to hit exposed the plaintiff to an unreasonable risk of harm. If this failure to warn that something patently obvious to all was about to happen could have supported a liability finding, then the question of

5

whether the defendant satisfied her duty with regard to this rather obvious hazard is certainly a jury issue as well.

2 Vicarious Liability

Vicarious liability addresses the situation in which liability can be imposed on a person for a tort committed by another by imputing the negligence of the actor to the defendant. In defining the relationship, grounded in agency, that is a prerequisite to vicarious liability, the courts have recognized a distinction between an employee and an independent contractor such that an employer can be liable for the tortious acts of its employee, but not for the tortious acts of an independent contractor. *Bonk v. McPherson*, 605 A.2d 74, 78 (Me. 1992). The major general distinguishing factor between the two classifications is whether the person's performance with respect to her physical conduct is subject to control by the employer. Eight specific factors are also relevant to distinguishing between an employee and independent contractor. *Murry's Case,* 154 A. 352 (Me. 1931). They are:

(1) the existence of a contract for the performance by a person of a certain or kind of work at a fixed price;

(2) (the) independent nature of her business or calling;

(3) employment of assistants

(4) her obligation to furnish necessary tools, supplies, and materials;

(5) her right to control the progress of the work;

(6) the time for which the worker is employed;

(7) the method of payment, whether by time or by the job;

(8) Whether the work is part of the regular business of the employer.

*Id.*

6

Ms. Beaulieu's employment status is not absolutely clear. Unlike the contractor in *Bonk*, 605 A.2d at 78, who was hired by a landowner to harvest wood and who built a road on the land of a neighbor, Ms. Beaulieu has some of the characteristics of an employee. Clearly, the defendant believed that Ms. Beaulieu worked for the farm as an independent contractor, and their dealings reveal that she was treated as an independent contractor for tax and payroll tax purposes. With specific regard to the relevant factors mentioned above, Ms. Beaulieu had an agreement with defendant to teach riding at a rate per lesson and also did other work at a variable hourly rate depending on the type of work. Payment for lessons was given directly to the farm, which then paid the instructor, including Ms. Beaulieu, a portion of the fee. Whether she was paid "by the job" depends on what constitutes "the job." If it is each discreet, lesson, then she was paid by the job, but in a broader sense she was not paid "by the job" because she was not paid a sum to provide all, or a portion of all, riding lessons for the farm. The nature of Ms. Beaulieu's business, giving riding lessons, was part of defendant's overall business, providing various horse related services, including lessons. Defendant provided all horses and necessary "tools". Although it cannot be said that the defendant controlled any aspect of the actual lesson, and Ms. Beaulieu generally arranged for her own lessons and dealt directly with clients, there is an issue concerning who arranged for the lesson on the day of the fall. It must also be noted, when one is considering this issue that is grounded in concepts of agency, that when Ms. Beaulieu was (arguably) supposed to be warning plaintiff of the hole in the porch, she was performing the agent-type activity of holding a check that plaintiff had written to the farm as payment for the lesson, in order to deliver it to the person in control of the farm.

7

Based on all of the aforementioned, the Court cannot find as a matter of law that defendant is not vicariously liable for the actions of Ms. Beaulieu, or satisfied her duty to provide a safe premises, and the motion for summary judgment is Denied.

The clerk is directed to incorporate this Order into the docket by reference.

Dated: April 27, 2012

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT

8

KAREN DEMORANVILLE - PLAINTIFF

Attorney for: KAREN DEMORANVILLE
WAYNE DOANE  - RETAINED
LAW OFFICES OF WAYNE DOANE
1154 EXETER ROAD
PO BOX 60
EXETER ME 04435

vs
CAROLYN ROSE  - DEFENDANT
849 RAYE ROAD
DOVER FOXCROFT ME 04426
Attorney for: CAROLYN ROSE
JODI NOFSINGER  - RETAINED
BERMAN & SIMMONS
129 LISBON STREET
PO BOX 961
LEWISTON ME 04243-0961

SUPERIOR COURT
PENOBSCOT, ss.
Docket No  BANSC-CV-2010-00178

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: OTHER NEGLIGENCE
Filing Date: 10/06/2010

## Docket Events:

11/02/2010 TRANSFER - REMOVAL TO SUPERIOR COURT EDI ON 11/02/2010 at 06:00 p.m.
          TRANSFERRED CASE: SENDING COURT CASEID NEWDCCV201000196

          FILING DOCUMENT - COMPLAINT FILED ON 10/06/2010

          Party(s):  CAROLYN ROSE
          SUMMONS/SERVICE - ACCEPTANCE OF SERVICE SERVED ON 09/22/2010

          Party(s):  CAROLYN ROSE
          ATTORNEY - RETAINED ENTERED ON 10/06/2010
          Defendant's Attorney: JODI NOFSINGER

          Party(s):  KAREN DEMORANVILLE
          ATTORNEY - RETAINED ENTERED ON 10/06/2010
          Plaintiff's Attorney: WAYNE DOANE

          Party(s):  CAROLYN ROSE
          MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 10/26/2010

          Party(s):  CAROLYN ROSE
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 10/29/2010
          MARY  KELLY , JUDGE
          COPIES TO PARTIES/COUNSEL

          Party(s):  CAROLYN ROSE
          RESPONSIVE PLEADING - ANSWER FILED ON 11/01/2010

          Party(s):  CAROLYN ROSE
          SUPPLEMENTAL FILING - NOTICE OF REMOVAL FILED ON 11/01/2010